May it please the Court, I'm Laura Grazer for the defendant, Mr. Hamman. My client is being faulted for believing a district judge. The district judge made it very clear when he appointed the second lawyer that he would not appoint a third lawyer. The government correctly points out that there are a few fudge words in there, but really the thrust of it is I'm going to say no, that's it, I generally do not grant a third request. I certainly will not appoint a third lawyer, not a third time. Well, let's assume that you're correct, counsel. The trial judge evaluated your client's request, found that he had made a strategic decision. He wanted to testify without being cross-examined. He thought that whether he agreed with it or not, he thought that was something that a smart attorney might do. And figured that into his decision. What's wrong with that? Your Honor, I think it's quite clear that that's what my client wanted. But the judge made it absolutely clear he wasn't going to get it. My client asked for a lot of things. He asked to be released, given his record. That was an unrealistic request, for example. And I think the point is, what did my client as a pro se manage to do or get in the record or sneak in the record that wouldn't have come in if he'd had a lawyer? And I've come up with, looking at the government's brief and looking through the transcript, I've come up with five things. And I submit that none of them matter. He asked the jury to pray. Certainly a lawyer wouldn't have done that, although a lawyer is probably. You never know these days. He surely would have waved the flag a little bit. He talked about his Norwegian girlfriend. I mean, that's utterly irrelevant. And the government's brief said that he got in his alibi. But I submit the record shows that that's not what happened. What happened is that when his first lawyer was on the witness stand, he presented to her an alibi and she didn't believe him. That's what got in. And I can think of little more damning than when your own lawyer doesn't believe you. Well, with respect, counsel, lawyers try to do all kinds of things to win their clients' cases. Sometimes they're successful. Sometimes they're not successful. So in this case, your client had a similar experience. But he behaved normally at the hearing. He answered yes to the question, do you feel perfectly comfortable and competent to make very important decisions today? You know, he didn't appear like somebody that was out of control. He seemed to know what he wanted in terms of the third lawyer. The reality is he didn't ask for a third lawyer again. I know you say the district judge said he wasn't going to get it anyway. But the reality is that your client is not somebody who was just left without any kind of a discussion, without any kind of an understanding. The judge had an opportunity to observe him, see the interaction with counsel. Counsel himself or the second lawyer, you know, thought he was fine. So admittedly, ours is not a perfect system. It's a human system. But under that system and under these facts, how can we fault the district judge's decision to let him represent himself? You know, I think this case presents which is heavier, the right to a fair trial or the right to represent yourself. The government, I think, correctly points out that the Feretta colloquy, in another context, checked all the bosses, including literally having him initial. But in the context, in July 7th, he told the judge over and over, and this is an ex parte, something's wrong with me, I'm not stable, and it was clear. The aid and assist, he misunderstood that. He thought he would get evaluated and get treated. That's what his lawyer said. But he had that before, did he not, in connection with whether he was competent to stand trial. He was evaluated. Now, I admit that's different than a Feretta evaluation, but it's not that there was no consideration by the district judge of your client's mental state, right? Absolutely. But my point is that that should have been inquired into during the Feretta colloquy in this case. I'm not saying that there always has to be a competency evaluation or a mental health inquiry during every and all Feretta, but in this particular case where the client and the judge had an extensive conversation about something's wrong with me, I don't understand what's wrong with me, and the judge said I'm going to try and help you, your lawyer and I are going to try and get you some help. And, again, my client believed him. It seems the conversation, your client did mention that, but otherwise he appeared rational, assertive, proactive, and even strategic in how he was presenting himself throughout the proceedings. So I'm trying to figure out just that reference to that statement alone. Does that then require something more of the judge when the judge is able to observe and hear how and see how the defendant was conducting himself? I'm not claiming that he's mentally ill. I'm saying that under these particular circumstances when he was so fulsome about his distress. And you mentioned that you think that one of the factors was that we should look at was that the judge said something about he was not going to appoint a third lawyer. And I guess I wanted to ask you, is there anything in the record that would show that Mr. Hayman relied on the district court's earlier statements that he would not appoint a third lawyer? It seems that you're here asking to simply infer that because I'm not sure I see anything in the record that Hayman raised that again later on or said anything to that effect. Can you point to something in the record? He never asked. He never spoke up. And I agree that my, I think the government at trial characterized him as not a wallflower, and I think that's probably accurate. But the behavior of my client and of his second lawyer was clearly that they were stuck with each other or Mr. Hayman was going to represent himself. He didn't complain about his second lawyer, did he? Did he complain about the second lawyer? Not at the time. He didn't feel, being that they had this forced marriage, he didn't feel like he needed to trash him. He was stuck with him. He was trying to make the best of it. But as you know, you're an experienced lawyer, and most of the time when we get claims of IAC or things of that nature, there was just a terrible battle going on with the lawyers. They can't communicate. The lawyer can't represent the client because they won't cooperate. There was none of this. There was no outward evidence that suggested there was a problem. It's true your client in the earlier point said he might want a third lawyer, and he had two already. And the district judge said, you know, I'm not going to do that. So he didn't ask again. But having a third lawyer is kind of unusual in any event, and I find this kind of an unremarkable Feretta hearing. I don't see what the problem is. What am I missing? I think my argument is that in the context of this case, the judge should have inquired about his mental health and should have made it clear Because the judge conflated two concepts. He needed to find out why he wanted to get rid of the second lawyer. You need to put the microphone in front of you. The judge, there were two concepts that the judge needed to analyze, why he wanted to get rid of the second lawyer and why he wanted to represent himself, and those are two different concepts. So that's what I'm focusing on in my claims. Do you want to save any of your time for a rebuttal? It's up to you, but if you want to, you can. So let's hear from the government. Good morning. Good morning, Your Honors. May it please the Court, Kelly Zusman appearing on behalf of the United States. The issue in this appeal really hinges on Judge Simon's fact findings, and that is, as this Court and the Supreme Court have recognized, the focus on Feretta is what the defendant understood, not what the district judge said. And Judge Simon, through his fact findings, found that Mr. Hammond was not deterred from seeking a third lawyer, that Mr. Hammond, as this Court has recognized throughout these proceedings, was assertive, was strategic, gave no outward indications that there was any ongoing mental distress happening. And the judge relied on that. He noted that, in fact, there were three pretrial conferences leading up to which Mr. Hammond made no mention of a desire for a new lawyer, of problems that he was having with Mr. Warren as his standby counsel. And Judge Simon held, as a factual and credibility matter, that Mr. Hammond's true motivation for representing himself at trial was what he stated during the Feretta hearing, that he, in fact, wanted. Let me, if I can just ask, under Feretta, does an error have to occur during the Feretta hearing itself, or why wouldn't the Court's earlier statement regarding his unwillingness, the district court's unwillingness to appoint an additional lawyer, a third lawyer, I guess, why wouldn't that have infected the whole Feretta hearing? And it's true, when we're looking at Feretta, and we're looking at what the defendant understood, we look at the entire record. So, Your Honor, I absolutely agree that we don't just examine the hearing itself. And certainly no one is suggesting that what Judge Simon said is irrelevant here. It's certainly relevant when we're looking at the overall scheme of what Mr. Hammond understood. It was simply on balance, given Mr. Hammond's history, given all of his interactions with the Court, that Judge Simon ultimately found. And I think Judge Simon also very candidly said, look, I probably shouldn't have said it that way. I probably shouldn't have stated it quite so strongly. But, Mr. Hammond, I've spent a lot of time with you, and you are no shrinking violet. If you want something, if you're upset with something, if you disagree with me time and time again, you've pointed that out. And because of that, Judge Simon ultimately concluded, and again, given the mix of information, that, in fact, Mr. Hammond here was motivated by a desire to represent himself because he wanted to tell his side of the story. And that's precisely what he did. And the notion of the alibi, he brought Ms. Frachero, put her on the witness stand, his first defense attorney, to specifically ask her about the steps that she undertook and didn't undertake to find this mysterious person at the coffee shop. Now, part of the problem with his whole coffee shop idea was that the coffee shop was only four blocks away from the bank. So even if she had found someone who had seen him there around the time of the bank robbery, it wasn't terribly helpful. But in any event, he successfully litigated motions in limine. He precluded the government from introducing evidence that he had attempted an escape. He raised objections at trial that were sustained. So there was simply no question about his competence to proceed or about the fact that his — knowing and intelligent, if the defendant understands basically three things. The nature of the charges against him, the possible penalties, and then the dangers and disadvantages of self-representation. So do these elements address our inquiry here, and can you address why those elements were addressed below? They were. They were actually addressed several times. Even before the hearing, Judge Simon had sent a copy of everything he was going to be covering with Mr. Hammond in advance. So he emailed that to Mr. Warren. He then went through that form line by line with Mr. Hammond to ensure that he understood. He engaged in a discussion with Mr. Hammond about whether — Mr. Hammond asked him, well, what about hybrid counsel? And Judge Simon very carefully explained, I'm not going to allow that. If you want to tell your side of the story, you can do it in one of two ways. You can either represent yourself, but I'm going to place some limits on introducing outside evidence, or you can continue with Mr. Warren, and he will represent you. He will put you on the witness stand, and you can tell your story that way. And he even described for him the two ways that could happen. It could either be through questions from Mr. Warren or through Mr. Hammond simply providing a narrative detail of what happened that day. So because of that — and I just — again, I don't believe there's any question here that the three core elements of Ferretta, and that is nature of the charges, potential penalties, dangers and disadvantages, were covered several times throughout the course of this Ferretta proceeding. Mr. Warren remained with your — I'm not your — with her client throughout this proceeding and was available for consultation as well, right? Correct. He was there the entire time. And in part, that's part of why Judge Simon, I think, was so taken aback by this post-trial motion, was that when Mr. Hammond actually executed his election to proceed pro se, Mr. Warren was appointed as a standby counsel with no objection whatsoever, no indication given that there was any sort of irreconcilable conflict with Mr. Warren. And in fact, as you probably saw during the Ferretta colloquy, that in fact Mr. Hammond had spoken to Judge Simon about how he would effectuate this, that he had received materials from Mr. Hammond and that Mr. Warren would format them. They gave every outward sign to Judge Simon that they were working perfectly well together in coordinating how they were going to divide the responsibilities. So between the defendant and Mr. Warren, all of the things that a learned lawyer would be able to do and would think of was presented by Mr. Warren. The defendant had an opportunity to present his case in the way he wanted to. Under the circumstances, it's your government's position that all three Ferretta elements were fulsomely satisfied. That's correct. The bottom line is that Mr. Hammond received a fair trial, and it was one of his choosing, and it was one that was executed in the way he wanted it executed. It simply wasn't successful. Unless there are any further questions. Questions by either of my colleagues? Judge Gorman?  Okay. Thank you, counsel. Thank you, Your Honor. So you have a little rebuttal time. I would urge, Your Honors, not to focus on motivation. Criminal defendants have lots of motivations. He was told, yeah, he wanted to tell his story and not be cross-examined. He wanted to be released. He wanted a lot of things. The district judge was very clear that he was not going to get that. And I submit that he didn't get anything in that a lawyer wouldn't have. Well, let me ask you this, counsel. Because Mr. Warren remained a standby counsel, and it's clear, if I understand it correctly, that your client consulted with him, so he, in effect, had a lawyer, he just wanted to present part of his case in the way he did. Judge Simon thought he was intelligent. He argued these motions in limine. He was a smart guy. He knew what he wanted to do. How does that not satisfy Ferretta in this case? One thing that I think this case may not be the vehicle, but the role of standby counsel is absolutely unclear. Mr. Warren did nothing, as far as we can tell from the record. He didn't even let him know about the deadline. It seems like that's the one thing that standby counsel should do, the deadline to file a motion for a new trial, the 14 days. And so we really just don't know because there are no standards as to what a standby counsel can do. It goes the whole range. Your time is almost up. Let me ask my colleagues, do either of you have any additional questions of counsel? Can I ask you a quick question? There's an analogy, it seems to me, with respect to this failure to ask for a third lawyer to lose versus the United States, where a judge before trial says, if you take the stand, I'm going to let your prior record in. A defendant doesn't take the stand. And yet the Supreme Court has said in order to preserve the issue, the defendant had to take the stand. It seems to me that regardless of what the judge's conclusions were or what expressed tentative views were about whether he was going to appoint a third lawyer, that at the very least a request should have been made to him to appoint that third lawyer and see what he would have done at that particular point in trial. Not that what I've done in the past as a district judge is any indication, but I have changed my mind where I've said this is the last time I'm appointing a new lawyer for you, and then eventually I did. So shouldn't there be a requirement that in order to preserve the issue, at the very least he asks the judge for the third lawyer? Your Honor, my response to that is not – Which he did not do here. Indeed, he did not. But again, I ask the Court to look at the context. This is a client that unambiguously has brain damage. Not a stupid man, but his brain, as he says, doesn't work in a way that he fully understands. And so that is – Well, that's what he says. But there was a psychiatric examination that found that he was entirely competent to stand trial, which, by the way, is not in the record. Correct. We don't even know what it said. And it might have even contained information that would have reflected on his so-called ability to represent himself. I don't know why that should excuse him from saying, Judge, I want a third lawyer. I know you said before you're not going to do it, but these are the reasons I want a third lawyer, before we speculate and possibly upset a conviction because of what he says now he thought. My response to that, Your Honor, is that there's a lot of room. Competent is a toggle switch. You are or you aren't. I'm not saying my client was not competent, but by his own admission, his brain does not work in a way that he understands. And so that's the context that I would ask this Court to examine the waiver in that context. Thank you. Any other questions by my colleagues? Thank you, counsel. Thank you both. The case just argued is submitted.
judges: M. Smith, Murguia, Korman